STANLEY CAMERON *et al.*, Plaintiffs-Appellants, v. RICHARD HUGHES *et al.*, Defendants-Appellees.

Fifth District   No. 5—87—0417

Opinion filed September 8, 1989.—Rehearing denied December 21, 1989.

Joseph T. Kelleher, Jr., of Edwardsville, for appellants.

John L. McMullin and T. Michael Ward, both of Brown, James & Rabbitt, P.C., of Belleville, for appellees.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiffs Stanley Cameron, Donna J. Cameron, Charles W. Johnson, Mary M. Johnson, Kenneth E. Cook, and Kay F. Cook appeal from an order of the circuit court of Madison County dismissing count VI of their amended complaint because the complaint failed to state a duty owed by defendant City of Troy to plaintiffs. The crux of plaintiffs' appeal is whether the trial court erred when it dismissed count VI of plaintiffs' amended complaint. Only defendant City of Troy is involved in this appeal. The original property owners, the developers and builders are not parties to this appeal. We affirm.

The record reveals the following facts. Each of the plaintiffs purchased lots in the Summertree First Addition in the City of Troy. Prior to the execution of each contract, the original owners of the property allegedly submitted a preliminary plat and final plat of the Summertree First Addition to be reviewed and approved by defendant. The original property owners then subdivided and sold the property to various developers and builders who eventually sold their lots to plaintiffs. Neither the original owners nor the developers or builders furnished copies of the studies and plats of the proposed subdivision to the Soil and Water Conservation District. Defendant approved the plat without such reports.

Plaintiffs alleged that "had a report and opinion been obtained from the District, and the unstable condition of the soil and ground water ascertained, the plat approval process would either have been altered to impose reasonable construction requirements on the owner and developer to compensate for the water and soil problem or the proceedings terminated." Plaintiffs specifically alleged that the property was unsuitable for construction and development of residential buildup because the water table was near the surface of the land, making the land incapable of support footings, foundations and concrete flatwork. Eventually, water seeped into plaintiffs' basements and the lower level of the houses cracked and settled. The flat concrete floors, driveways and porches cracked and crumbled. Plaintiffs also alleged that defendant had a duty to regulate the planning de-

sign and feasibility of subdivisions as well as the contents of preliminary and final plats. (Ill. Rev. Stat. 1985, ch. 5, par. 127.2a; Ill. Rev. Stat. 1985, ch. 109, pars. 2, 3; Comprehensive Plan Ordinance, Zoning Ordinance & Building Code of the City of Troy.) Plaintiffs further alleged that the city had a duty to consider reports of the Soil and Water Conservation District concerning the submission of the preliminary and final plats of their subdivision.

Defendant filed a motion to dismiss. On May 6, 1987, the circuit court entered its order granting defendant's motion to dismiss count VI because "no facts are alleged that would give rise to any duty on the part of the defendant toward the plaintiffs."

The only issue before this court is whether the trial court erred when it dismissed count VI of plaintiffs' amended complaint. Resolution of this issue depends upon the interpretation and interrelationship of section 22.02a of the Soil and Water Conservation Districts Act (Ill. Rev. Stat. 1985, ch. 5, par. 127.2a) and sections 1 and 2 of "An Act to revise the law in relation to plats" (the Plat Act) (Ill. Rev. Stat. 1985, ch. 109, pars. 1, 2).

Plaintiff argues the public policy of the State and the duty of each person is to provide and maintain a healthful environment. (Ill. Const. 1970, art. XI, §1.) Plaintiff points out that the General Assembly has emphasized the economic and environmental advantages from subdivision control and all incidental standards for approval of a proposed subdivision plat, and as such, the statutes in question establish standards which impose responsibility on the regulatory authorities charged with approval of plats. Thus, the statutes in question specifically establish a duty upon defendant to submit the proposed plat to the Soil and Water Conservation District prior to approval.

Defendant argues that this court must accept as true all well-pleaded facts and reasonably drawn inferences. (*Bond v. Dunmire* (1984), 129 Ill. App. 3d 796, 804, 473 N.E.2d 78, 84.) Although plaintiffs must allege facts which would demonstrate a duty on the part of defendant to protect plaintiffs, liability only arises when a municipality owes a special duty to a particular plaintiff different from the duty owed the public at large. (*Swaw v. Ortell* (1984), 137 Ill. App. 3d 60, 67, 484 N.E.2d 780, 785.) In this case, defendant argues, the Plat Act does not confer a special duty in favor of plaintiffs but rather the duty expressed in the Act is public in nature.

Whether a duty is owed to plaintiffs from defendant is a matter of statutory interpretation. Plaintiffs argue that defendant had a duty to seek and use a report from the Soil and Water Conservation

District because defendant has a duty to protect the general health and safety of the public. However, this court finds that after reading the various relevant statutes, the city does not have a duty to seek such a report.

The policy of the Soil and Water Conservation Districts Act (Conservation Act) is

"to provide (a) for the conservation of the soil, soil resources, water and water resources of this State, (b) for the control and prevention of soil erosion, *** and (d) for the prevention of erosion, floodwater and sediment damages, and thereby to conserve natural resources, control floods, prevent impairment of dams and reservoirs, assist in maintaining the navigability of rivers and harbors, conserve wild life and forests, protect the tax base, protect public lands, and protect and promote the health, safety and general welfare of the people of this State. (Ill. Rev. Stat. 1985, ch. 5, par. 107.)

In furthering the policy of the Conservation Act, the Conservation District "shall make all natural resource information available to the appropriate county agency or municipality in the promulgation of zoning ordinances or variances." (Ill. Rev. Stat. 1985, ch. 5, par. 127.2a.) However, the District's duty to submit such a report lies with any person "who proposes to subdivide vacant or agricultural lands." (Ill. Rev. Stat. 1985, ch. 5, par. 127.2a.) That person must furnish a copy of such petition or proposal to the District. (Ill. Rev. Stat. 1985, ch. 5, par. 127.2a.) After the person has submitted the proposal, the District has 30 days to issue its written opinion and submit that opinion to the appropriate county agency or municipality. Ill. Rev. Stat. 1985, ch. 5, par. 127.2a.

Pursuant to the Plat Act (Ill. Rev. Stat. 1985, ch. 109, par. 1 *et seq.*), whenever a person proposes to subdivide his property into two or more parts, any of which is less than five acres:

"[H]e must have it surveyed and a subdivision plat thereof made by an Illinois Registered Land Surveyor, which plat must particularly describe and set forth all public streets, alleys, ways for public service facilities, ways for utility services and community antenna television systems, parks, playgrounds, school grounds or other public grounds, and all the tracts, parcels, lots or blocks, and numbering all such lots, blocks or parcels by progressive numbers, giving their precise dimensions. There shall be submitted simultaneously with the subdivision plat, a study or studies which shall show topographically and by profile the elevation of the land prior to the commencement

of any change in elevations as a part of any phase of subdividing, and additionally, if it is contemplated that such elevations, or the flow of surface water from such land, will be changed as a result of any portion of such subdivision development, then such study or studies shall also show such proposed changes in the elevations and the flow of surface water from such land." (Ill. Rev. Stat. 1985, ch. 109, par. 1.)

Once the plat is completed, the person must submit the plat to the city council for their approval. (Ill. Rev. Stat. 1985, ch. 109, par. 2.) The city council cannot approve a plat

"unless, in addition to any other requirements of such council, board of trustees or county board or the officer or officers designated by them, the topographical and profile studies to be submitted with the subdivision plat have on their face the signed statement of a Registered Professional Engineer, and the owner of the land or his duly authorized attorney, to the effect that to the best of their knowledge and belief the drainage of surface waters will not be changed by the construction of such subdivision or any part thereof, or, that if such surface water drainage will be changed, reasonable provision has been made for collection and diversion of such surface waters into public areas, or drains which the subdivider has a right to use, and that such surface waters will be planned for in accordance with generally accepted engineering practices so as to reduce the likelihood of damage to the adjoining property because of the construction of the subdivision. The topographical and profile studies required herein shall not be recorded, but shall be retained and filed by city, village or county to which submitted for approval of the subdivision plat, as permanent public documents." Ill. Rev. Stat. 1985, ch. 109, par. 2.

In reading the statutes together, this court finds that the only duty defendant has is to approve a plat which has a signed statement from a registered professional engineer and the property owner's attorney regarding the drainage of the surface waters. Plaintiffs do not allege any such duty or breach of such duty. Rather, in count I, paragraph 8, which was included in count VI, they allege that the original owners of the property and "their agents and employees, licensed surveyor, caused [the] preliminary plat of the subdivision and final plat of Summertree First Addition, to be reviewed by and approved by the regulatory authority, defendant City of Troy, a municipal corporation." Accordingly, the original owners did submit the proper documents to the city, and plaintiffs do not allege that the

city approved the plat without the appropriate documents. Since the city was under no duty to seek information on the water table of the plat, plaintiffs' construction of the relevant statutes is without support. Accordingly, this court finds that the trial court did not err when it dismissed count VI of plaintiffs' amended complaint.

For the foregoing reasons, the order of the circuit court of Madison County is affirmed.

Affirmed.

HOWERTON and RARICK, JJ., concur.